**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | Civ. No. 04-2315 (WHW) |
| v. | : | |
| | : | |
| LUCENT TECHNOLOGIES, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

The Securities Exchange Commission ("SEC") moves for entry of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure with respect to the SEC's claims of primary liability under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5 against the four remaining defendants in this action. Alternatively, the SEC moves for certification pursuant to 28 U.S.C. § 1292(b) to appeal that portion of the Court's April 6, 2005 Order which dismissed the SEC's claim of primary liability against defendant Michelle Hayes-Bullock, and to appeal the portions of the Court's April 27, 2009 Order which granted summary judgment to the three other remaining defendants with respect to the SEC's primary liability claims against them. The Court heard oral argument on November 9, 2009. The Court denies the SEC's motion.

NOT FOR PUBLICATION

## BACKGROUND[1]

Defendants in this civil enforcement action brought by the Securities and

Exchange Commission ("SEC") are Lucent Technologies, Inc. ("Lucent") and its executives and

employees.  The SEC alleges that Defendants violated the Exchange Act by improperly

recognizing revenue and pre-tax income in violation of generally accepted accounting principles

("GAAP").  Lucent and several of the individual defendants have reached out-of-court

settlements with plaintiff and have been dismissed from the case.

Four individual defendants, all former senior executives and managers at Lucent,

remain.  They are Jay Carter, Michelle Hayes-Bullock, Alice Leslie Dorn, and Nina Aversano.

On October 30, 2009, counsel for Defendant Carter informed the Court that Carter has reached

an agreement with the SEC to settle the remaining claim against him, subject to submission to

and approval by this Court.  On November 13, 2009, counsel for Defendant Hayes-Bullock

informed the Court that Hayes-Bullock has reached an agreement in principle with the SEC to

dismiss the remaining claim against her without prejudice and that she has withdrawn her

opposition to the SEC's present motion.

This matter arises out of sales of telecommunications equipment by Lucent and its

recognition of revenues from those sales in fiscal year 2000.  The principal allegations against all

defendants are that the defendants authorized or approved oral side agreements, credits or other

incentives in connection with those sales to induce Lucent's customers to purchase equipment.

_____

[1]        This background section borrows from this Court's April 27, 2009 Opinion in this
action.  Additional factual background is provided there.

**NOT FOR PUBLICATION**

These extra-contractual commitments, according to the SEC, cast substantial doubt on Lucent's

ability to collect payment on these sales and thus could not be recognized as revenues under

GAAP.  The improper revenue recognition caused Lucent to materially overstate pre-tax income

in its financial statements filed with the SEC.  With respect to Aversano and Dorn, the SEC's

charges are based on their role in five transactions with two of Lucent's top distributors.  SEC's

claims against Carter and Hayes-Bullock stem from their involvement in Lucent's sale of four

wireless network switches to AT&T Wireless Services.  The SEC's charges against each

defendant include claims for primary violations of Section 10(b) of the Exchange Act and Rule

10b-5 and aiding and aiding abetting violations under the same provisions.

      In 2005, Hayes-Bullock successfully moved to dismiss the Section 10(b) and Rule

10b-5 primary violation claims against her.  See SEC v. Lucent Techs., Inc., 363 F. Supp. 2d 708,

719-24 (D.N.J. 2005) ("Lucent I").  This Court held that the "bright line" test was the appropriate

standard to determine primary liability under Section 10(b).  Id. at 724.  As applied by this Court,

the "bright line" test requires that a primary violator "must actually make the material

misstatement or omission and the 'misrepresentation must be attributed to the specific actor at

the time of public dissemination.'"  Id. at 720 (quoting Wright v. Ernst & Young LLP, 152 F.3d

169, 174-75 (2d Cir. 1998)).

      In adopting the "bright line" test, this Court rejected the "substantial participation"

test adopted by courts in other circuits and an alternative test advocated by the SEC.  The

"substantial participation" test would deem an actor liable for a primary violation whenever there

is "substantial participation or intricate involvement of the secondary party in the preparation of

-3-

NOT FOR PUBLICATION

financial statements 'even though that participation might not lead to the actor's actual making of the statements.'" Lucent I, 363 F. Supp. 2d at 722 (quoting In re Enron Corp. Secs., Derivative & ERISA Litig., 235 F. Supp. 2d 549, 583 (S.D. Tex. 2002)). The test advocated by the SEC would deem an actor liable for a primary violation if the actor is "indirectly" responsible for the making of a material statement and scienter can be proved. Lucent I, 363 F. Supp. 2d at 721-22.

Recognizing that the Third Circuit has not established which test should be applied, this Court concluded that the "bright line" test is more consistent with the statutory language of Section 10(b) and more clearly delineates which types of behavior give rise to primary liability versus secondary liability. Id at 724. The Court noted that "the adoption of this test does not mean that those who fall outside this net will escape punishment as the SEC can readily bring an aiding and abetting liability action against such actors." Id. Applying the "bright line" test, this Court dismissed the SEC's primary liability claim against Hayes-Bullock. Id.

In an April 27, 2009 Opinion, this Court applied the "law of the case" doctrine and held that the "bright-line" test continues to be the operative standard for determining primary liability under Section 10(b) and Rule 10b-5. SEC v. Lucent Tech., Inc., 610 F. Supp. 2d 342, 354 (D.N.J. 2009) (Lucent II). This Court rejected the SEC's argument that the Supreme Court's decision in Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008) compelled the Court to reconsider the "bright line" test because it declared new law. Id. at 355. Rather, this Court found that "[r]ead in its entirety, Stoneridge weakens rather than supports the SEC's position here. . . . The [Stoneridge opinion] indicates that the Supreme Court wishes to

-4-

NOT FOR PUBLICATION

police the line between primary liability and aiding and abetting liability strictly.  This in turn

suggests that the Supreme Court would prefer the 'bright line' test, which sharply delineates

between the two types of liability, over the alternative tests."  Lucent II, 610 F. Supp. 2d at 355.

This Court also rejected the SEC's argument that recent decisions from the Tenth Circuit and the

Southern District of New York demonstrate that the "bright-line" rule is inappropriate for

determining primary liability in SEC enforcement actions.  Id. at 356-57.  This Court noted that

decisions from other circuits are not controlling and held that it would not depart from the "law

of the case" due to them.  Id.  This Court applied the "bright-line" test and held that primary

liability under Section 10(b) and Rule 10b-5 could not attach to any of the remaining defendants

even if all facts were viewed in the light most favorable to Plaintiff.  The Court granted summary

judgment to all remaining defendants and dismissed the SEC's primary liability claims against

them.

Significantly, this Court in Lucent II stated that "[e]ven if the Court were to adopt

a more flexible 'bright line' test, the result would not be different."  This Court noted that under a

"relaxed bright-line" test, primary liability would exist if the defendant "was sufficiently

responsible for the statement – in effect, caused the statement to be made – and knew or had

reason to know that the statement would be disseminated to investors."  Id. at 357 (quoting SEC

v. KPMG, 412 F. Supp. 2d at 375).  This Court found that the facts viewed in a light most

favorable to the non-moving party "simply depict a chain of causation leading to the making of a

misstatement. . . . Although defendants had responsibilities that affected the task of recognizing

revenues, they did not have ultimate nor penultimate authority in that task."  Id. at 358.

-5-

NOT FOR PUBLICATION

This Court in <u>Lucent II</u> denied Dorn's motion for summary judgment dismissing the SEC's claim against her for aiding and abetting violations of Section 10(b) and Rule 10b-5. <u>Id</u>. at 364.  This Court found that "[g]enuine issues of fact remain as to whether Dorn's actions proximately caused Lucent's misstatements."  <u>Id</u>. at 364.  This Court granted the motions of Carter and Hayes-Bullock for summary judgment and dismissed the aiding and abetting liability claims against them on the grounds that there was not sufficient evidence in the record for a jury to conclude that either defendant had knowledge of the underlying fraud.  <u>Id</u>. at 368.

On August 17, 2009, the SEC  moved for the relief under consideration.  On October 5, 2009, an Order was issued scheduling a final pretrial conference in this action for December 4, 2009.

## DISCUSSION

**I.      Motion for Entry of Final Judgment Pursuant to Rule 54**

A.      <u>Standard of Review</u>

Rule 54(b) of the Federal Rules of Civil Procedure provides that a court may enter final judgment on claims in an action even if the entire action is not yet resolved.  The Rule states in relevant part:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).  Courts must use their discretion to ensure that application of Rule 54(b) "effectively 'preserves the historic federal policy against piecemeal appeals.'"  <u>Curtiss-Wright</u>

**NOT FOR PUBLICATION**

Corp. v. Gen. Elec. Corp., 446 U.S. 1, 8 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351

U.S. 427, 438 (1956)).  Rule 54(b) certification is "disfavored" in circumstances where the

adjudicated and unadjudicated claims share "significant similarities, such as involving the same

parties, the same legal issues, or the same evidence."  Ortho-McNeil Pharm., Inc. v. Kali Labs.,

Inc., No. 02-5707, 2007 U.S. Dist. LEXIS 44996, at *9-10 (D.N.J. June 20, 2007) (citing cases).

Courts engage in a two-pronged inquiry to decide Rule 54(b) motions.  First, a

court must decide whether a plaintiff's complaint sets forth "more than one claim for relief."

Greico v. New Jersey Dep't of Ed., No. 06-cv-4077, 2008 U.S. Dist. LEXIS 3284, at *6 (D.N.J.

Jan. 16, 2008).  To determine this, courts analyze whether the adjudicated claims are "inherently

inseparable from, closely related to, or sufficiently independent of" the remaining unadjudicated

claims.  Id. (quoting Sears, 351 U.S. at 436).  The Third Circuit instructs courts to look at factors

including "similar factual scenario, similarity in declaratory or injunctive relief, and whether the

requested relief would differ based upon which count the court ruled."  Greico, 2008 U.S. Dist.

LEXIS 3284, at *6 (citing Allegheny County Sanitary Auth. v. U.S. Envtl. Prot. Agency, 732

F.2d 1167, 1173 (3d Cir. 1984)).

Second, a court must decide whether the moving party has demonstrated that there

is "no just reason for delay of appeal."  Courts consider such factors as:  "(1) the relationship

between the adjudicated and unadjudicated claims; (2) the possibility that the need for review

might or might not be mooted by future developments in the district court; (3) the possibility that

the reviewing court might be obliged to consider the same issue a second time; (4) the presence

or absence of a claim or counterclaim which could result in set-off against the judgment sought

NOT FOR PUBLICATION

to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations,

shortening the time of trial, frivolity of competing claims, expense, and the like."  Berckeley Inv.

Group, Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006).

  B.  <u>Analysis</u>

    The SEC argues that its primary liability claims against Defendants are distinct

from its aiding and abetting liability claims against Defendants.  The SEC compares the elements

of both types of claims and argues that, although they are related, "they do not present the sort of

overlaps that would affect the court of appeals' determination of the proper standard for primary

liability, which is quite different from the standard for aiding and abetting liability."  (Pl. Br. at

11 and n.2.)

    The SEC also argues that efficiency of justice favors granting its Rule 54(b)

motion.  The SEC contends that, if the action goes to trial on the currently remaining claims and

then an appellate panel rejects the "bright-line" standard, the action will need to proceed to trial a

second time to retry Defendants on the primary liability claims.  The SEC argues that, because

"the two trials would necessarily cover much of the same factual ground, including expert

testimony regarding the complex accounting issues," it would be a waste of judicial resources

and against the best interests of the parties for the action to proceed to trial without appellate

resolution of the proper primary liability standard.  (Pl. Br. 11-12.)

    Lastly, the SEC argues that its Rule 54(b) motion should be granted because "it is

important to seek a prompt determination by the Third Circuit of the standard for primary

liability in Commission cases.  The district court's decisions in the Lucent case have been cited

NOT FOR PUBLICATION

by other district courts and, if unreviewed, may prejudice future Commission cases."  (Pl. Br. at 12.)

Defendants counter that, because the facts and evidence underlying the SEC's primary liability claims and remaining claims are "thoroughly intertwined," the primary liability claims and the remaining claims are not distinct claims.  (Def. Opp. at 4.)  Defendants argue that, under relevant case law, "[a]lternative legal theories based on the same factual scenario present only one claim, not multiple claims, for purposes of Rule 54(b)'s final judgment requirement."  (Def. Opp. at 6-7 (citing cases).)  Defendants contend that, "because each defendant faces counts based on the same set of facts, for purposes of Rule 54(b), the SEC alleges only one claim against each defendant, none of which has been finally decided."  (Def. Opp. at 7.)

Defendants also argue that judicial efficiency weighs in favor of deferring any appeal in this action until after trial, in order to "enable the Court of Appeals to consider all appealable issues on all claims with the benefit of a fully developed factual record."  (Def. Opp. at 5-6.)  Defendants argue that such a deferral would avoid judicial waste because two separate judicial panels would not need to familiarize themselves with the facts of this action, and multiple appeals in the same action would be avoided.  In addition, Defendants argue that an appeal at this stage, when a final pre-trial conference is already scheduled, would cause "unjustifiable delay."  (Def. Opp. at 8.)  Defendants note that the case involves events that occurred in 1999 and 2000, and that the SEC concluded its investigation in 2001-02 but did not bring suit until 2004.  Defendants maintain that the interest of justice favors allowing the action

-9-

NOT FOR PUBLICATION

to proceed to trial so that they can finally try to remove the cloud of litigation hanging over them. (Def. Opp. at 8.)

The Court finds that, under the first prong of the Rule 54(b) test, Defendants have the stronger argument. The SEC's primary liability and aiding and abetting claims are not distinct claims for purposes of this rule. Both claims arise from a "similar factual scenario" and seek the same type of relief. Greico, 2008 U.S. Dist. LEXIS 3284, at *6. Moreover, both claims are alleged in the same count (Count I) of the Complaint. Because the two sets of claims are not distinct, Rule 54(b) certification is improper under the first prong of the Rule 54(b) test.

In addition, Rule 54(b) certification is improper under the second prong of the test because Plaintiff have failed to show that there is no just cause for delay. The following analysis of the Berckeley factors, which are among the factors that courts consider in using their discretion to evaluate Rule 54(b) motions, strongly supports this conclusion.

1.    Relationship Between Adjudciated and Unadjudicated Claims

First, the relationship between the adjudicated and unadjudicated claims is very strong. Plaintiffs acknowledge that both sets of claims "necessarily cover much of the same factual ground, including expert testimony regarding the complex accounting issues." (Pl. Br. at 11-12.) As a result of the similarities between the two sets of claims, this first factor strongly supports proceeding with the litigation in this Court, rather than allowing a "piecemeal" appeal of the litigation. See Byrnes v. City of Brigantine, No. 05-5960, 2009 U.S. Dist. LEXIS 2329, at *9-10 (D.N.J. Jan. 14, 2009) ("While Plaintiffs suggest that the similarity between the legal and factual issues raised by the [claims at issue] militates in favor of granting their motion, a 'close

-10-

**NOT FOR PUBLICATION**

relationship between the adjudicated and unadjudicated claims' is in fact a reason not to grant a

Rule 54(b) motion, not the reverse.") (quoting Allis-Chalmers Corp. v. Philadelphia Elec. Co.,

521 F.2d 360, 364 (3d Cir. 1975); Ortho-McNeil, 2007 U.S. Dist. LEXIS 44996, at *8 ("Where

the adjudicated and unadjudicated claims share significant similarities, such as involving the

same parties, the same legal issues, or the same evidence, Rule 54(b) certification is

disfavored.").

        2.     <u>Possibility of Further Developments Mooting Need for Review</u>

        Second, there is a possibility here that the need for review by the appellate panel

will be mooted by further proceedings in this Court.  As this Court noted in <u>Lucent I</u>, the broader

primary liability test advocated by the SEC covers conduct falling within the umbrella of aiding

and abetting liability that the SEC is free to pursue.  <u>Lucent I</u>, 363 F. Supp. 2d at *724 (noting

that adoption of the bright-line test "does not mean that those who fall outside this net will

escape punishment as the SEC can readily bring an aiding and abetting action against such

actors").  It is possible that the outcome of future proceedings in this Court will be that

Defendants are found not liable for aiding and abetting liability on the basis of factual findings

that may preclude a finding of primary liability under any potential test that the Third Circuit

could adopt.  If so, appellate review of the proper primary liability standard would be

unnecessary.  This factor is less strong than the first factor, but still favors a finding that there is a

just cause for delaying appellate review.

NOT FOR PUBLICATION

        3,      <u>Need for Appellate Panel to Consider Same Issue a Second Time</u>

This third favor weighs in favor of an entry of final judgment on the SEC's primary liability claims.  As this Court noted at oral argument without objection from the parties, the party that loses at trial is very likely to appeal.  All judicial findings in this case would likely be part of such appeal, negating any judicial efficiency benefit from permitting an appeal now.

        4.      <u>Existence of Counterclaims or Crossclaims</u>

The fourth factor of the <u>Berckeley</u> test does not apply because the dismissed claims do not involve a counterclaim or cross claim that could result in setoff against the judgment sought to be made final.

        5.      <u>Miscellaneous Factors</u>

The Court finds that miscellaneous factors including "delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, and the like" weigh strongly in favor of not entering final judgment at this time.  This action is predicated on Defendants' alleged unlawful conduct that occurred more than nine years ago.  A final pretrial conference is now scheduled for December 4, 2009.  The Court is mindful of Defendants' assertion that a cloud of litigation has already been hanging over their heads for a long period of time.  The Court finds that it is preferable to proceed towards trial now rather than requiring Defendants to wait out a potentially lengthy appellate delay.

      Moreover, the Court notes that the "bright-line" test was originally adopted as the governing standard in this litigation in <u>Lucent I</u> on April 6, 2005.  The Court reaffirmed the "bright line" test as the operative standard in its <u>Lucent II</u> opnion rendered April 27, 2009.  But

-12-

**NOT FOR PUBLICATION**

the present motion was not filed by the SEC until August 17, 2009, more than four years after this Court first adopted the "bright line" standard in <u>Lucent I</u> and more than three months after the Court reaffirmed the "bright-line" standard in <u>Lucent II</u>.  The Court views the time-delayed aspect of the SEC's motion as an additional factor that leans toward denial of the SEC's motion, particularly since the SEC's delay in filing its motion undercuts its argument that waiting until after trial for appellate review is unduly harmful to its interests.

Plaintiff argues that, if an appellate panel rejects the "bright-line" test, then a second trial on its primary liability claims will be necessary at the district court.  Plaintiff contends that it would expedite the proceedings to allow an appeal of the proper standard for primary liability now.  But the Third Circuit's selection of a different primary liability standard would not necessarily require a second trial — Plaintiff may still need to show that their primary liability claims could survive a motion for summary judgment under any new standard that might be adopted.  Moreover, a possibility of multiple trials is an insufficient reason to justify a Rule 54(b) certification.  The possibility of a potential retrial "exists in virtually every case where" a district court dismisses part of an action but retains the rest.  <u>Byrnes</u>, 2009 U.S. Dist. LEXIS 2329, at *3 (citing <u>Hogan v. Consolidated Rail Corp.</u>, 961 F.2d 1021, 1026 (2d Cir. 1992)). Here, the Court finds it preferable to abide by the "general federal policy against piecemeal appeals" and enable the action to proceed to trial on the remaining claims.

The Court finds that the <u>Berkeley</u> factors as a whole weigh more strongly in favor of enabling the action to proceed to trial without the interruption of appellate review.

NOT FOR PUBLICATION

II.     **Motion for Certification Pursuant to Section 1292(b)**

    A.     <u>Legal Standard</u>

       Section 1292(b) states in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  Certification pursuant to Section 1292(b) has been described as an "extreme measure that 'should be granted sparingly' in cases where circumstances 'are so extraordinary as to overcome the presumption against piecemeal litigation."  <u>Greico</u>, 2008 U.S. Dist. LEXIS 3284, at *9 (quoting <u>In re Powell</u>, No. 06-4085, 2006 U.S. Dist. LEXIS 80598, at *8 (E.D. Pa. Nov. 2, 2006)).

       Section 1292(b) calls for a three-pronged inquiry:  a court must decide whether an order presents a (1) controlling question of law as to which (2) there is substantial ground for difference of opinion and (3) an immediate appeal would materially advance the termination of the litigation.  "Controlling questions of law" encompass orders which, "if erroneous, would be reversible error on final appeal."  <u>Katz v. Carte Blanche Corp.</u>, 496 F.2d 747, 755 (3d Cir. 1974). A "substantial difference of opinion" requires "genuine doubt as to the correct legal standard. For example, a moving party's citation to numerous conflicting decisions might constitute a sufficient basis for the finding that substantial differences of opinion exist."  <u>Morgan v. Ford Motor Co.</u>, 2007 U.S. Dist. LEXIS 5455, at *24 (D.N.J. Jan. 25, 2007).

NOT FOR PUBLICATION

      B.    <u>Analysis</u>

      Defendants argue that the Court's earlier dismissals of Plaintiff's primary liability claims do not constitute "controlling questions of law" because the Court has stated in dicta that the SEC's allegations "are insufficient to hold the defendants primarily liable even under the relaxed 'bright line' standard. . . . Defendants role in this case simply bears no resemblance to the responsibilities and conduct of the various defendants in the cases advanced by the SEC."  (Def. Opp. at 12 (quoting <u>Lucent II</u>, 610 F. Supp. at 358).)  Defendants argue that, "even if the Third Circuit were to adopt the SEC's proposed approach, it does not follow that this Court's dismissal of the primary liability claims against defendants would necessarily be reversed."  (Def. Opp. at 12.)

      The SEC counters that an appeal would involve a "controlling issue of law" because, even though this Court stated in dicta that Defendants would not be primarily liable under a "relaxed bright line" test, "it is not clear that the Court applied precisely the test urged by the Commission, much less whatever test is ultimately determined by the Third Circuit."  (Pl. Reply Br. at 11.)  The SEC argues that, under the proper test, it would be clear that three of the defendants "caused the misstatements in the financial statements to be made and, thus, were primarily liable for those misstatements even though, as this Court has found, the defendants were not 'integrally involved in the drafting of that mistatement' or 'ultimately responsible for recognizing revenues at Lucent.'" (Pl. Reply Br. at 11 (quoting <u>Lucent II</u>, 610 F. Supp. 2d at 357).)

**NOT FOR PUBLICATION**

Defendants also argue that there is no "substantial ground for difference of opinion" under the second prong of Section 1292(b) because "the SEC merely reiterates its disagreement with this Court's ruling and points to the different approaches taken by courts that are not binding on this Court; the SEC does nothing to raise a genuine doubt as to whether this Court's ruling was correct." (Def. Opp. at 14.) Defendants argue that, under relevant case law, the "difference of opinion must arise out of genuine doubt as to the correct legal standard," and that here it does not. (Def. Opp. at 14 (quoting <u>Kapossy v. McGraw-Hill</u>, 942 F. Supp. 996, 1001 (D.N.J. 1996).)

The SEC counters that there is "substantial ground for difference of opinion" because other circuit courts have rejected the bright line test as the proper standard for primary liability in an SEC enforcement action. (Pl. Reply Br. at 12.) The SEC lists the Seventh and Tenth Circuits as circuits that have rejected the bright line test, and notes that there is tension among courts in the Southern District of New York as to whether the bright line test is still good law in the Second Circuit. (Pl. Reply. Br. at 12.)

Lastly, Defendants argue that certifying for appeal the question of the proper standard for primary liability in this Circuit "would not materially advance the termination of this litigation but, instead, would prolong it indefinitely." (Def. Opp. at 14.) Defendants contend that, "in the absence of settlement, there is nothing left for the Court to do but try the case, and an interlocutory appeal will not eliminate the need for trial." (Def. Opp. at 14.) Defendants further argue that they "would be prejudiced by having to wait for their day in court for at least another year while the cloud of the SEC's allegations continues to hang over their heads." (Def. Opp. at

-16-

**NOT FOR PUBLICATION**

15.)  Defendants note, however, that the critical inquiry under this prong is not whether there is harm or prejudice to the parties, but rather whether interlocutory appeal would materially advance the ultimate termination of the litigation.  (Def. Opp. at 15.)

In response, the SEC argues that an interlocutory appeal "will not prolong the litigation and, if the court of appeals reinstates the primarily liability claims, it will avoid the necessity of a second trial."  (Pl. Reply Br. at 12.)  The SEC argues that any such appeal "will have little adverse effect on the defendants."  (Pl. Reply Br. at 13.)

The Court finds that the first two prongs of the test are affirmatively satisfied. The proper test for primary liability in this Circuit is a "controlling issue of law" because, if a different standard were used from that adopted by this Court, this Court would need to analyze the issue afresh, and a different result could issue.  Although the Court stated in dicta that even using a more relaxed bright-line test would produce the same result, the test advocated by the SEC is significantly broader than the "relaxed bright line" test considered by the Court in dicta. At the very least, the need to analyze whether Defendants' conduct would fit within a different standard that the Court may adopt might make the Court's decision to use a different standard "reversible error" such that the Court may need to reconsider the SEC's primary liability claims. That said, the Court reminds everyone that dicta is dicta — non-binding verbiage.

The Court finds that there is substantial ground for difference of opinion as to whether the "bright line" test is the correct test for primary liability because other circuit courts have adopted different tests and the Third Circuit has not selected which test is governing law in this Circuit.  In Lucent I, the Court noted that the Ninth Circuit has adopted the "substantial

-17-

NOT FOR PUBLICATION

participation" test, and that the Tenth Circuit has adopted a more flexible "bright line" test than

that adopted by this Court.  In <u>Lucent II</u>, the Court noted that the "bright line" test applied by the

Second Circuit "is not as rigid as it seems" and that the Second Circuit "has not been altogether

consistent in applying the 'bright line' test in private actions."  <u>Lucent II</u>, 610 F. Supp.2d at 355-

56.  Because the Third Circuit has not resolved which test is to be applied in this Circuit, and

other circuit courts have adopted tests other than the "bright line" test, there is "substantial

ground for difference of opinion" as to whether the "bright line" test is the proper standard.

   However, the Court finds that permitting the SEC to proceed with an interlocutory

appeal would not materially advance the termination of this litigation.  To the contrary, such a

step would slow the litigation.  A final pre-trial conference is scheduled for December 4, 2009,

and, as Defendants assert, "there is nothing left for this Court to do but try the case."  (Def. Opp.

at 14.)  An interlocutory appeal could take considerable time, and would prevent the action from

reaching a conclusion as swiftly as possible.  Plaintiffs argue that a second trial may be

necessary if the Third Circuit rejects the "bright line" test.  That may or may not be so.  The

Court knows this however:  whoever loses at trial will appeal.  There will be an appeal.

   That said, the Court notes that its decision to certify an action for interlocutory

appeal pursuant to Section 1292(b) is discretionary, and here other factors weigh in favor of

denying the SEC's motion.  As discussed, the Court adopted the "bright-line" rule as governing

law in this case on April 6, 2005, when it issued its decision in <u>Lucent I</u>.  The SEC could have

moved for an interlocutory appeal at that time, but instead waited years until August 17, 2009,

more than three months after the Court rendered its decision in <u>Lucent II</u>, to do so.  The Court

-18-

**NOT FOR PUBLICATION**

finds that proceeding to trial, rather than granting Plaintiff's significantly time-delayed motion and waiting out a potentially lengthy appeal process, is in the best interest of justice as well as most likely to bring this action to a conclusion.  This action is not the "exceptional" case where an interlocutory appeal is warranted.

**CONCLUSION**

The Court denies the SEC's motion for entry of final judgment pursuant to Rule 54(b).  The Court also denies the SEC's motion for certification of an interlocutory appeal pursuant to Section 1292(b).

November 16, 2009                                    <u>**s/William H. Walls**     </u>
                                                     United States Senior District Judge